Stephen M. Doniger (SBN 179314)
stephen@donigerlawfirm.com
Scott A. Burroughs (SBN 235718)
scott@donigerlawfirm.com
David Shein (SBN 230870)
david@donigerlawfirm.com
DONIGER / BURROUGHS
603 Rose Avenue
Venice California 90291
Telephone: (310) 590-1820

Attorneys for Defendant Chunhong Zhang

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| ANTON INTERNATIONAL, INC., a California corporation, | Case No.: 5:21-cv-00120-JWH-KKx |
|---|---|
| | *Honorable John W. Holcomb Presiding* |
| Plaintiff, | **DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES** |
| v. | |
| CHUNHONG ZHANG, an individual; et. al. | |
| Defendants. | [DECLARATION OF CHUNHONG ZHANG; REQUEST FOR JUDICIAL NOTICE; AND [PROPOSED] ORDER FILED CONCURRENTLY] |
| | Date: March 26, 2021<br>Time: 9:00 a.m.<br>Courtroom: 2 |

PLEASE TAKE NOTICE that on March 26, 2021, at 9:00 a.m., before the Honorable John W. Holcomb, through the Zoom Webinar ID: 161 801 9947; Passcode: 133178 or physically present if restrictions have been lifted in Courtroom 2 of the above-captioned Court, located at 3470 Twelfth Street Riverside, CA 92501-3801, defendant Chunhong Zhang will and hereby does move, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, to dismiss with prejudice Plaintiff's Complaint on the grounds that the Complaint fails to state a claim for copyright infringement because the works at issue are not substantially similar or virtually identical as a matter of law: after filtering out generic and unprotectable elements, no reasonable observer could find the works are substantially similar or virtually identical. This defect cannot be cured by amendment, thus dismissal with prejudice is required.

This motion is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, Declaration of Chunhong Zhang, Request for Judicial Notice and all pleadings and papers of record and on file in this case, and such additional authority and argument as may be presented at or before the time this Motion is submitted.

This Motion is made following the conference of counsel pursuant to L.R. 7-3, which took place on February 12, 2021.

Respectfully submitted,

Dated:  February 26, 2021       By:     */s/ Stephen M. Doniger*
Stephen M. Doniger, Esq.
David Shein, Esq.
DONIGER / BURROUGHS
Attorneys for Defendant
Chunhong Zhang

## **TABLE OF CONTENTS**

I. INTRODUCTION AND SUMMARY OF ARGUMENT………....……..…1

II. FACTUAL BACKGROUND……………………………...……….…….2

    A. The Unicorn Designs Differ…………………………....……..2

    B. The Graphic Designs Differ……………….……………...….…4

III. ARGUMENT…………………………………………………….....…..5

    A. Legal Standard Applicable To Motion To Dismiss…………….....….5

    B. Plaintiff Fails To State A Claim For Copyright Infringement……….6

        1. The Unicorn Costumes At Issue Are Not Substantially Similar As A Matter Of Law…………………………………….....…7

           a. Numerous Components Of The Sky Horse Are Unprotectable……………………………………....8

           b. The Protectable Elements Of The Sky Horse Are Different From the Subject Product…………………...11

        2. The Graphic Designs At Issue Are Not Substantially Similar As A Matter Of Law……….………………………………….13

IV. CONCLUSION………………….……………………………………14

# TABLE OF AUTHORITIES

Cases                                                                                                           Page(s)

*Alchemy II, Inc. v. Yes! Entm't Corp.*,
   844 F. Supp. 560 (C.D. Cal. 1994) ............................................................ 9, 10, 11

*Aliotti v. R. Dakin & Co.*,
   831 F.2d 898 (9th Cir. 1987) ........................................................................ 8, 10

*Apple Computer, Inc. v. Microsoft Corp.*,
   35 F.3d 1435 (9th Cir. 1994) ............................................................................. 11

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ............................................................................................ 5

*Aurora World, Inc. v. Ty Inc.*,
   719 F. Supp 2d 1115 (C.D. Cal. 2009) ...................................................... 6, 7, 9, 10

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ............................................................................................ 5

*Brown v. Elec. Arts, Inc.*,
   724 F.3d 1235 (9th Cir. 2013) ............................................................................ 5

*Cavalier v. Random House, Inc.*,
   297 F.3d 815 (9th Cir. 2002) ............................................................................. 11

*Christianson v. West Publishing Co.*,
   149 F.2d 202 (9th Cir. 1945) .............................................................................. 7

*Daniels-Hall v. Nat'l Educ. Ass'n.*,
   629 F.3d 992 (9th Cir. 2010) .............................................................................. 6

*Erickson v. Blake*,
   839 F. Supp. 2d 1132 (D. Or. 2012) .................................................................. 7

*Folkens v. Wyland Worldwide, LLC*,
   882 F.3d 768 (9th Cir. 2018) .............................................................................. 8

*Funky Films, Inc. v. Time Warner Entm't Co., L.P.*,
   462 F.3d 1072 (9th Cir. 2006) ............................................................................ 6

*Gallagher v. Lions Gate Entm't*,
   2015 WL 12481504 (C.D. Cal. Sept. 11, 2015) ................................................ 7

*Herbert Rosenthal Jewelry Corp. v. Kalpakian*,
   446 F.2d 738 (9th Cir. 1971) .............................................................................. 8

*Ileto v. Clock, Inc.*,
   349 F.3d 1191 (9th Cir. 2003) ............................................................................ 5

*Knievel v. ESPN*,
   393 F.3d 1068 (9th Cir. 2005) ............................................................................ 4

*L.A. Printex Indus., Inc. v. Aeropostale, Inc.*,
   676 F.3d 841 (9th Cir. 2012) ............................................................................. 13

*Mattel, Inc. v. MGA Entm't, Inc.*,
   616 F.3d 904 (9th Cir. 2010) .................................................................. 7, 9

*Muromura v. Rubin Postaer and Associates*,
   2014 WL 4627099 (C.D. Cal. Sept. 16, 2014) ............................................ 7, 8, 9

*Pasillas v. McDonald's Corp.*,
   927 F.2d 440 (9th Cir. 1991) ................................................................. 1, 2, 9, 10

*Rentmeester v. Nike, Inc.*,
   883 F.3d 1111 (9th Cir. 2018) ................................................................ 6, 7, 13

*Rice v. Fox Broadcasting Co.*,
   330 F.2d 1170, 1175 (9th Cir. 2003) (9th Cir. 2003) ......................................... 11

*Satava v. Lowry*,
   323 F.3d 805 (9th Cir.2003) .................................................................. 6, 8, 13

*Sportsmans Warehouse, Inc. v. Fair*,
   576 F. Supp. 2d 1175 (D. Colo. 2008) ................................................................ 9

*Star Fabrics, Inc. v. Wet Seal, Inc.*,
   2014 WL 12591272 (C.D. Cal. Dec. 2, 2014) ...................................................... 13

*Steckman v. Hart Brewing, Inc.*,
   143 F.3d 1293 (9th Cir. 1998) .......................................................................... 15

*Swartz v. KPMG LLP*,
   476 F.3d 756 (9th Cir. 2007) ............................................................................. 6

*Zindel v. Fox Searchlight Pictures, Inc.*,
   2018 WL 3601842 (C.D. Cal. July 23, 2018)........................................................ 7

**Rules**

Fed. R. Civ. P. 12(b)(6) ......................................................................................... 2, 5

**Other Authorities**

L.R. 7 .................................................................................................................. 2, 1

DEFENDANT'S MOTION TO DISMISS COMPLAINT

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION AND SUMMARY OF ARGUMENT

Plaintiff's complaint is a textbook example of bad faith, anticompetitive litigation. Plaintiff found Defendant, a foreign vendor, selling competing unicorn costumes/bathrobes that share no protectable artistic expression and served a DMCA takedown notice on Amazon to stop those sales. After Defendant issued a counter-notification that there is no colorable claim of infringement (and that Defendant is in China), Plaintiff filed this lawsuit, likely assuming that Defendant would be without the resources or willingness to litigate overseas to protect its business from Plaintiff's predatory acts. But even if it were not bad faith litigation, the Complaint is ripe for a dismissal with prejudice because its allegations make clear that no viable copyright claim exists.

Plaintiff's Complaint makes clear that the works at issue—Plaintiff's Pink Sky Horse, Blue Sky Horse, and graphic design (styled by Plaintiff as "Subject Design C"), on the one hand, and Defendant Chunhong Zhang's unicorn robe at issue (labeled as "Subject Product A," "Subject Product B," and "Subject Product C" by Plaintiff[1] and referred to collectively herein as "Subject Product")—share no protectable artistic expression. *Pasillas v. McDonald's Corp.*, 927 F.2d 440, 442 (9th Cir. 1991). The Blue Sky Horse and Pink Sky Horse designs (referred to collectively hereinafter as "Sky Horse" or "Sky Horse designs") and Subject Product share only generic elements commonplace in depictions of horses and unicorns and costumes of same: horns, eyes, ears, nose, and mane—but each of those elements is expressed differently. While copyright protects concrete expression of an underlying idea, it does not protect generic elements that are stock

---

[1] During the parties' L.R. 7-3 meet and confer, counsel for Plaintiff confirmed that product labeled as Subject Product A, Subject Product B, and Subject Product C and pictured in the Complaint at paragraphs 13, 17, and 21 are all the same product.

- 1 -

or standard to the subject matter, particularly where those elements are expressed differently. Likewise, Plaintiff's Subject Design C and the graphic design on Subject Product share only some generic ideas: a star and sky elements on top of a colored background with no cognizable similarity in the expression of those ideas.

Plaintiff cannot plead around the evident lack of substantially similar in protectable expression (or virtually identical, as should be deemed the correct standard) as a matter of law. So owing, the Court should dismiss the Complaint with prejudice.

## II.   FACTUAL BACKGROUND

Plaintiff alleges it is the exclusive licensee in the United States of the Sky Horse designs and the graphic Subject Design C. Dkt. 2, ¶10, 14, 18. The Sky Horse designs depict unicorn and horse elements on the hood of garments. The elements include a horn, a mane, ears, eyes and nose sewn into the hood. See, Dkt. 2, ¶13, 17; Dkt. 2-1, p. 6-8; Dkt. 2-2, p. 5-7.  The Subject Design C is a graphic including diagonal rainbow-colored stripes with stars on top. See, Id. ¶21; Dkt. 2-3, p. 7. Plaintiff alleges that Subject Product infringe the copyrights of both Sky Horses and the Subject Design C.

### A.   The Unicorn Designs Differ

A review of the unicorn designs in Plaintiff's Complaint makes readily apparent that they share no protectable artistic similarity but are only similar in their underlying idea and inclusion of elements necessary to identify the product as a unicorn. While Plaintiff alleges that Zhang's Subject Product infringes the Sky Horse designs, and Zhang acknowledges that the Subject Product is a garment with a hood bearing unicorn and horse features, the similarities end there.

*The eye elements differ*. Sky Horse uses eyes that include a common crescent white moon shape and two dots along the "equator" of the eye. On the other hand, the eyes on the Subject Product include a narrower blue crescent moon

shape and only one dot at the top of the cartoon eye. The placement of the eyes differs too. The Sky Horse eyes are wide apart and placed well below the horn whereas the eyes on the Subject Product are placed in line with the horn and are close together.

*The nose elements differ*. The nose on the Sky Horse is depicted by two dots placed wide apart on an oval-like appendage sewn onto the tip of the hood whereas the nose on the Subject Product is represented by two dots close to each other on the seam of the hood.

*The horn features differ*. While the horns are both common horn or cone shapes, the horn on the Sky Horse has four rings and is placed on the top of the hood far above the eyes and is the same color as the garments on which they are sewn. On the other hand, the horn on the Subject Product has five rings and is placed low on the hood and in line with the eyes. In addition, the horn on the Subject Product does not use the same colorway that is used on the remainder of the garment (as the Sky Horse does). Rather, the Subject Product uses a purple horn with yellow rings and stands out from the remainder of the garment fabric. In addition, the horn on Subject Product is larger in circumference (proportionate to the whole hood) than the horn on the Sky Horse which appears small relative to all other features on the hood.

*The mane elements differ*. The manes on the Sky Horse and Subject Product differ in both texture, pattern and color. The mane on the Subject Product is comprised of long strings made primarily of blue, white and purple and the strings of these varying colors are interspersed next to each other throughout the main. On the other hand, the manes on the Sky Horse appear to use shorter and thinner strings than those strings on the Subject Product. And moreover, rather than having all colored strings interspersed together as is done on the Subject Product, the

mane on the Sky Horse uses different colored clumps of string placed next to each other.

### B.    The Graphic Designs Differ

Separate from Plaintiff's claim that the unicorn costume / robe has been copied, Plaintiff also avers that the textile design artwork on the unicorn costume / robe has been copied. But, as is clear from the face of the Complaint and detailed below, the designs share nothing more than the idea of a multi-colored background with stars—an idea that is not subject to copyright protection—with the expression of that idea being entirely different in the two works. So owing, Plaintiff cannot, as a matter of law, prevail on its claims.

To illustrate the lack of similarity of any protectable element or combination thereof, one need only look at the Complaint or, to facilitate the comparison, the better-quality CAD of the offending artwork attached to this motion. The Complaint incorporates the graphic artwork on the Subject Product by using a photograph of the Subject Product in the Complaint. The Court, therefore, should review and consider the contents of this work. *See e.g., Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005) (incorporation by reference doctrine permits the court to consider documents whose contents are alleged in the complaint and whose authenticity no party questions but are not physically attached to the pleading). A true and correct copy of the graphic on the Zhang garment is included as Exhibit 1 to the Chunhong Zhang Declaration filed concurrently.

***The color patterns differ***. Subject Design C is combination of are a pinkish red, blue, purple and yellow with a white "fuzz" stripes with hard demarcations between the red and blue stripes forming a slight purple fuzz over the blue stripe. Between the yellow and red stripe is white spray paint like feature covering some of the yellow and red stripes. Notably, the coloration involves only four hues and is *not* in any sense a rainbow.

On the other hand, the graphic on the offending garments employs a red, orange, yellow, green, indigo, and violet gradient with no hard lines or demarcations. The color pattern on Zhang's garments is thus common to all rainbows and in the order of colors in all rainbows. To call this color gradient common is an understatement.

*The star features differ*. Subject Design C includes sparsely placed white dots and rudimentary stars made of two perpendicular white lines with a dot at center. The lone dots are completely opaque and in approximately three sizes but none tiny. On the other hand, the star elements on the Zhang garment graphic uses a bokeh effect and includes detailed star elements and densely placed dots of varying sizes (including tiny dots), opacity and transparency spanning the entire face of the graphic.

## III. ARGUMENT

### A. Legal Standard Applicable To Motion To Dismiss

To survive a Rule 12(b)(6) motion for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The court need not "accept any unreasonable inferences or assume the truth of legal conclusions cast in the form of factual allegations." *Brown v. Elec. Arts, Inc.*, 724 F.3d 1235, 1248 (9th Cir. 2013) (quoting *Ileto v. Clock, Inc.*, 349 F.3d 1191, 1200 (9th Cir. 2003). Rather, the complaint must contain sufficient concrete facts to evaluate a plaintiff's right to relief from merely "speculative" to "plausible." *Twombly*, 550 U.S. at 555, 570.

Although Rule 12(b)(6) motions are generally limited to the allegations in the complaint, courts "may consider evidence on which the complaint necessarily relies if: (1) the complaint refers to the document; (2) the document is central to the

plaintiff's claim; and (3) no party questions the authenticity of the copy attached to the 12(b)(6) motion." *Daniels-Hall v. Nat'l Educ. Ass'n.*, 629 F.3d 992, 998 (9th Cir. 2010) (citations and internal quotation marks omitted). A court may also consider "matters properly subject to judicial notice." *Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007).

### B. Plaintiff Fails to State A Claim for Copyright Infringement

To state a claim for copyright infringement, a plaintiff must allege two elements: "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Funky Films, Inc. v. Time Warner Entm't Co., L.P.*, 462 F.3d 1072, 1076 (9th Cir. 2006). For this second element, a plaintiff must allege facts that demonstrate "unlawful appropriation, that is, illicit copying . . . because copyright law does not forbid all copying." *Rentmeester v. Nike, Inc.*, 883 F.3d 1111, 1117 (9th Cir. 2018). Indeed, "a defendant incurs no liability if he copies only the 'ideas' or 'concepts' used in the plaintiff's work." *Id*. Rather, "[t]o infringe, the defendant must also copy enough of the plaintiff's expression of those ideas or concepts to render the two works 'substantially similar.'" *Id*. And where there is only a narrow range of expression for a given work, as is the case with stuffed animals, copyright protection is "thin" and the second element of the claim can only be satisfied by plausibly alleging virtual identity. *See e.g., Satava v. Lowry*, 323 F.3d 805, 812 (9th Cir.2003); See also, *Aurora World, Inc. v. Ty Inc.*, 719 F. Supp 2d 1115, 1138 (C.D. Cal. 2009) (finding that stuffed animals are entitled to thin protection at best).

To determine whether two works are substantially similar, courts employ "a two-part analysis consisting of the 'extrinsic test' and the 'intrinsic test.'" *Id*. at 1118. The extrinsic test—the only test relevant to a motion to dismiss—"assesses the objective similarities of the two works, focusing only on the protectable elements of the plaintiff's expression." *Id*. "Before that comparison can be made,

the court must 'filter out' the unprotectable elements of the plaintiff's work—primarily ideas and concepts, material in the public domain, and scenes a faire (stock or standard features that are commonly associated with the treatment of a given subject)." *Id*. Thus, "[*t*]he key question always is: Are the works substantially similar beyond the fact that they depict the same idea?" *Mattel, Inc. v. MGA Entm't, Inc*., 616 F.3d 904, 917 (9th Cir. 2010) (emphasis added).

A court may decide whether there is sufficient objective similarity under the extrinsic test as a matter of law on a motion to dismiss. *Rentmeester*, 883 F.3d at 1123 (affirming dismissal of copyright infringement claim where two photos were not substantially similar as a matter of law); *Christianson v. West Publishing Co*., 149 F.2d 202, 203 (9th Cir. 1945) ("There is ample authority for holding that when the copyrighted work and the alleged infringement are both before the court, capable of examination and comparison, non-infringement can be determined on a motion to dismiss"; affirming dismissal of copyright infringement claim on a motion to dismiss); *Zindel v. Fox Searchlight Pictures, Inc*., No. CV 18-1435 PA, 2018 WL 3601842 (C.D. Cal. July 23, 2018) (granting motion to dismiss copyright infringement claim for lack of substantial similarity); *Gallagher v. Lions Gate Entm't*, No. 2:15-cv-2739-ODW, 2015 WL 12481504 (C.D. Cal. Sept. 11, 2015) (same); *Muromura v. Rubin Postaer and Associates*, No. CV 12-9263 DDP, 2014 WL 4627099, at *2 (C.D. Cal. Sept. 16, 2014) (same); *Erickson v. Blake*, 839 F. Supp. 2d 1132 (D. Or. 2012) (same).

### 1. The Unicorn Costumes At Issue Are Not Substantially Similar As A Matter Of Law

Plaintiff's claim for copyright infringement of the Sky Horse rests solely on the allegations that the Subject Product is substantially similar or identical to the Sky Horse. However, a visual comparison of the works confirms that Plaintiff

cannot state a claim for copyright infringement because, by any objective standard, the parties' respective unicorn garments are not substantially similar or identical.

### a. Numerous Components Of The Sky Horse Are Unprotectable

Plaintiff cannot claim a monopoly on depictions of unicorns or unicorn costumes, as the idea of unicorns is "within the common heritage of humankind," and thus free for others to use. *Satava v. Lowry*, 323 F.3d 805, 813 (9th Cir. 2003). Thus, in order to avoid unduly chilling artistic expression, this Court is obligated to dispose of copyright infringement claims based solely on unprotectable ideas. To do so, the Court must first "filter out and disregard the nonprotectable elements" of the Sky Horse, including all "elements of expression that necessarily follow from an idea, or expressions that are as a practical matter, indispensable or at least standard in the treatment of an idea." *Muromura*, 2014 WL 4627099, at *2.

The Ninth Circuit and courts within this Circuit have repeatedly held accordingly. *See, e.g., Satava v. Lowry*, 323 F.3d at 810-11 (copyright protection does not extend to the idea of a jellyfish sculpture, nor the natural characteristics of jellyfish such as bright colors, tendril-like tentacles, and rounded bells); *Folkens v. Wyland Worldwide, LLC*, 882 F.3d 768, 775 (9th Cir. 2018) (anyone is free to create work based on the idea of two dolphins crossing under sea; "[n]o artist may use copyright law to prevent others from depicting this ecological idea."); *Aliotti v. R. Dakin & Co.*, 831 F.2d 898, 901-02 (9th Cir. 1987) ("No copyright protection may be afforded to the idea of producing stuffed dinosaur toys or to elements of expression that necessarily follow from the idea of such dolls . . . . Appellants therefore may place no reliance upon any similarity in expression resulting from either the physiognomy of dinosaurs or from the nature of stuffed animals."); *Herbert Rosenthal Jewelry Corp. v. Kalpakian*, 446 F.2d 738, 742 (9th Cir. 1971) (others are free to utilize idea of depicting a jewel encrusted bee pin; "We think the

production of jeweled bee pins is a larger private preserve than Congress intended to be set aside in the public market without a patent. A jeweled bee pin is therefore an 'idea' that defendants were free to copy."); *Mattel, Inc. v. MGA Entm't, Inc.*, 616 F.3d 904, 915-16 (9th Cir. 2010) (the concept of depicting a young, fashionable female doll with exaggerated features is unoriginal and an unprotectable idea); *Pasillas v. McDonald's Corp.*, 927 F.2d 440, 443 (9th Cir. 1991) (others are free to copy the idea of a mask depicting a man in the moon); *Aurora World, Inc. v. Ty Inc.*, 719 F. Supp 2d 1115, 1136 (C.D. Cal. 2009) ("no copyright protection can be afforded the idea of producing plush toys that resemble particular animals"); *Alchemy II, Inc. v. Yes! Entm't Corp.*, 844 F. Supp. 560, 568 (C.D. Cal. 1994) (no copyright protection for the idea of a talking, plush teddy bear); *Sportsmans Warehouse, Inc. v. Fair*, 576 F. Supp. 2d 1175, 1180-81 (D. Colo. 2008) (others are free to copy the idea of sculptures of elk; "[a]n accurate portrayal of something that exists in the world (i.e., facts and ideas, such as a particular bottle) cannot be copyrighted.").

Certain conceptual features of the Sky Horse, including its spiraled horn, eyes, nose and mane are unprotectable elements as they are "indispensable or at least standard in the treatment" of unicorns. *Muromura*, 2014 WL 4627099, at *2. The Sky Horse and Subject Product both include a spiraled horn, eyes, nose and mane but unicorns are generally depicted as having these features. For example, the Merriam-Webster Dictionary defines "unicorn" as:

> A mythical, usually white animal generally depicted with the body and head of a horse with long flowing mane and tail and a single often spiraled horn in the middle of the forehead.

Request for Judicial Notice ("RJN"), Ex. A. Similarly, the Encyclopedia Britannica contains an entry on "Unicorns" which states: "Unicorn, mythological animal resembling a horse or a goat with a single horn on its forehead." RJN, Ex. B.

Accordingly features such as spiraled horns, manes, eyes, ears and nose are common to depictions of unicorns, are not subject to copyright protection, and may be freely used by others, including Chunhong Zhang.

Moreover, no copyright protection may be given to the idea of producing a stuffed unicorn head on the hood of a garment and Plaintiff "may place no reliance upon any similarity in expression resulting from either the physiognomy of [unicorns] or from the nature of stuffed animals. *Aliotti*, 831 F.2d at 901.

In *Alchemy II, Inc. v. Yes! Entm't Corp.*, 844 F. Supp. 560, 568 (C.D. Cal. 1994), plaintiff claimed defendant's stuffed talking teddy bear infringed plaintiff's stuffed talking teddy bear because, among other things, both bears were made of plush material, featured protruding noses, and paws and ears in a light color which contrasted with the rest of the fur. *Id*. In granting the defendant's motion for summary judgment, the Court reasoned that "all of these features . . . are derived from the common idea of a talking, plush teddy bear[]" and noted that the plush material was "common to most stuffed toys," and that the "contrasting paw and ear colors are standard on teddy bears everywhere." *Id*. The Court thus concluded that plaintiff "may not rely on any of these standard or functional features to demonstrate substantial similarity." *Id*; *see also Aurora World, Inc. v. Ty Inc.*, 719 F. Supp. 2d 1115, 1136 (C.D. Cal. 2009) (color of capuchin and lemur stuffed toys unlikely to be protectible, "given that it resembles the animals as they are found in nature."); *Pasillas*, 927 F.2d at 443 & n. 2 (crescent moon shape, depiction of human face in the center, and white or off-white color are standard, stock elements in treatment of idea of a man in the moon mask).

With respect to the protectability of the shape of the teddy bear's head, the *Alchemy II* Court went on to state that:

First, although the shape is somewhat distinctive, it is not unique. There are only a limited number of head shapes a teddy bear could

> have: round, oval, wider on the bottom than on the top (pear shaped), or wider on the top than on the bottom. Thus, this shape probably is not protectable.

Id. at 568.

And, in analyzing the depiction of two stars in plaintiff's and defendant's respective children's books, the Ninth Circuit concluded:

> Finally, we compare the two depictions of stars being polished. Obvious similarities again appear. The subject matter—a star being polished—is the same. Furthermore, the stars being polished are both five-pointed, yellowish, and smiling. But the basic idea of polishing a star and the depiction of the common features of stars [e.g., yellow color, five-pointed] are unprotectible[.]

*Cavalier v. Random House, Inc.*, 297 F.3d 815, 827 (9th Cir. 2002) (emphasis added).

Just as teddy bears commonly feature contrasting paw and ear colors, stars are depicted as yellow, and jellyfish feature tentacles, unicorns are commonly depicted with spiraled horns, manes, eyes, and noses. These elements are thus "treated like ideas and are therefore not protected by copyright." *Rice v. Fox Broadcasting Co.*, 330 F.2d 1170, 1175 (9th Cir. 2003). As a matter of law, Plaintiff may not rely on these elements in alleging copyright infringement against Defendants. *Apple Computer, Inc. v. Microsoft Corp.*, 35 F.3d 1435, 1446 (9th Cir. 1994) (plaintiff "may place no reliance upon any similarity in expression resulting from unprotectable elements.").

### b. The Protectable Elements Of The Sky Horse Are Different From The Subject Product

After filtering out the unprotectable elements in Plaintiff's Work, i.e., the horn, eyes, ears, mane, and nose, a side-by- side comparison of the parties' respective unicorn hoods reveals starkly different expressive elements as set forth above and as summarized here:

Plaintiff's hood or head is either plain blue or plain pink whereas the Zhang hood is a colorful rainbow gradient. The Sky Horse uses cartoon eyes including a wide white crescent moon shape and two dots along the "equator" of the eye while the eyes on the Subject Product include a narrower blue crescent moon shape and only one dot at the top of the cartoon eye. Plaintiff's eyes are placed far apart and well below the horn, while the eyes on the Subject Product are close together and in line with the horn. The nose on the Sky Horse is depicted by two dots placed wide apart on an oval-like appendage whereas the nose on the Subject Product is represented by two dots close together on the seam of the hood.

The spiraled horns differ in that the Sky Horse horn has four rings and is placed high on the hood whereas the horn on the Subject Product has 5 rings and is placed low on the hood and in line with the eyes. In addition, the horn on the Subject Product does not use the same colorway that is used on the remainder of the garment, whereas the Sky Horse uses the same color. In addition, the horn on the Subject Product appears larger in circumference (proportionate to the whole hood) than the horn on the Sky Horse which appears small relative to all other features on the hood.

The manes on the Sky Horse and Subject Product differ in both texture, pattern and color. The Subject Product uses long strings made primarily of blue, white and purple interspersed next to each other throughout the main. The strings on the Sky Horse main are shorter and thinner in texture. Moreover, the mane on the Sky Horse uses five or six different colored clumps of string placed next to each other rather than being interspersed as is the case with Subject Product.

In sum, the only commonality between the works is the idea or concept of a stuffed unicorn on the hood of a garment, but not the unique expression of that idea. And in light of the obvious and material differences in the expressive elements, as a matter of law, Plaintiff cannot plausibly allege that the protected

elements of its Sky Horse are substantially similar or virtually identical to the Subject Product and thus its claims should be dismissed with prejudice.

### 2. The Graphic Designs At Issue Are Not Substantially Similar As A Matter of Law

As set forth above, on a motion to dismiss, the Court need only address the extrinsic test. See, *Rentmeester*, 883 F.3d at 1123. "In applying the extrinsic test … [i]n the context of fabric designs, a court must examine 'the similarities in their objective details in appearance, including, but not limited to, the subject matter, shapes, colors, materials, and arrangement of the representations.'" *Star Fabrics, Inc. v. Wet Seal, Inc.*, 2014 WL 12591272 (C.D. Cal. Dec. 2, 2014); *see also L.A. Printex Indus., Inc. v. Aeropostale, Inc.*, 676 F.3d 841, 849 (9th Cir. 2012).

Here, Plaintiff fails to articulate in writing a single similarity between its Subject Design C and the graphic on Defendant's garment and instead relies upon the images in the Complaint only. However, a review of the images in the Complaint (Dkt. 1, ¶21) and the CAD of the design used on the Subject Product (Zhang Declaration, Exhibit 1), establish that Plaintiff cannot plausibly allege substantial similarity.

Initially, the idea of combining star-like features over the background of diagonal stripes or color gradients is not protectable and neither are the constituent parts (stars and strips of color). *See, e.g., Satava*, 323 F.3d at 812. Thus, the Court should next examine objective details of the two works. On examination it is clear that the works are not substantially similar.

***The shapes on the background differ***. Subject Design C presents stripe-like shapes and at some points, hard demarcations between colors. On the other hand, Defendant's graphic is a fluid gradient.

***The shapes on the background differ***. The star shapes on Subject Design C are rudimentary perpendicular lines with a dot at the center whereas the stars on

the Zhang graphic appear as detailed flashes with multiple prongs emanating from the center. The prongs vary in size in the individual star and from star to star.

The dots on Subject Design C appear in three or four sizes, are opaque and do not overlap. On the other hand, the Zhang graphic includes constellations of tiny dots and constellations of bigger dots which vary in size, opaqueness and transparency. And some of the dots overlap.

***The colors differ***. The colors on Subject Design C background are a pinkish red, indigo, purple and yellow with a white "fuzz" whereas the colors on Defendant's graphic are red, orange, yellow, green, blue, indigo and purple with a pastel shading. While Plaintiff's design has approximately five colors, the Zhang graphic has seven colors.

***The arrangements on the background differ***. The background on Subject Design C includes clearly demarcated stripes whereas the background on the Zhang graphic is color gradient with the colors fading into each other with no clear demarcation between them.

***The arrangements on the star elements differ***. The stars and dots on Subject Design C are sparsely placed with and distanced from each other whereas the stars and dots on the Zhang graphic are densely packed and span the entire graphic.

Given the many differences between the expressive elements of these graphic works, Plaintiff cannot plausibly allege substantial similarity or state a claim for copyright infringement.

## IV.   CONCLUSION

Because the Complaint does not plausibly plead virtual identity or substantial similarity, it does not state a claim for copyright infringement of its Sky Horse or Subject Design C. Further, it is not possible that Plaintiff could amend its pleading to allege facts that could state an infringement claim for either work. *See,*

*e.g., Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1298 (9th Cir. 1998) ("Although there is a general rule that parties are allowed to amend their pleadings, it does not extend to cases in which any amendment would be an exercise in futility or where the amended complaint would also be subject to dismissal."). Thus, Chunhong Zhang respectfully requests that the Court dismiss the Complaint with prejudice.

Respectfully submitted,

Dated: February 26, 2021   By:   */s/ Stephen M. Doniger*
Stephen M. Doniger, Esq.
David Shein, Esq.
DONIGER / BURROUGHS
Attorneys for Defendant
Chunhong Zhang